UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| ADRIA M. RAVEN | * | CIVIL ACTION NO. 15-2810 |
| VERSUS | * | JUDGE ROBERT G. JAMES |
| KRAFTMAN FEDERAL CREDIT UNION | * | MAG. JUDGE KAREN L. HAYES |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a motion to dismiss for lack of subject matter jurisdiction and/or for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(1) & (6) [doc. # 5], filed by defendant Kraftman Federal Credit Union ("Kraftman"). For reasons explained below, it is recommended that the 12(b)(1) motion be DENIED, but that the 12(b)(6) motion be GRANTED.

### Background

On December 9, 2015, Adria Raven filed the instant complaint under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*., against her former employer, Kraftman. She also invoked the court's supplemental jurisdiction to assert a parallel claim under the Louisiana Employment Discrimination Law ("LEDL"), La. R.S. § 23:332.[1]  Raven alleges that in 2010, she converted to the Pagan religion, and on April 28, 2014, changed her legal name from "Odem" to her Pagan name of "Raven." Shortly thereafter, on May 16, 2014, after over 20 years of service, Kraftman unlawfully terminated Raven's employment because she refused to

---

[1] Raven previously filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), and received a right to sue letter on October 20, 2015.

change her Pagan name of "Raven" back to "Odem."

Plaintiff asserts four claims for relief: 1) unlawful discrimination on the basis of religion, manifested by her termination from employment for refusing to change her name, 42 U.S.C. § 2000e-2(a)(1); 2) failure to accommodate religious practices and beliefs by prohibiting display of religious symbols and subjecting her to ridicule, 42 U.S.C. § 2000e(j); 3) unlawful religious discrimination for hostile work environment, failure to accommodate religious beliefs, and wrongful termination in violation of state law, La. R.S. § 23:332; and 4) intentional interference with plaintiff's re-employment efforts in violation of unspecified law.

Plaintiff seeks a judgment declaring that Kraftman's practices violate state and federal law; injunctive relief; an award of wages, salaries, and benefits lost as a result of defendant's actions; damages for pain and suffering; exemplary and punitive damages; attorney's fees, costs, and interest; training and/or discipline for defendant's employees; and an order requiring defendant to notify prospective employers that plaintiff would have been eligible for rehire, but for her unlawful termination.

On February 29, 2016, Kraftman filed the instant motion to dismiss plaintiff's Title VII claims for failure to accommodate and for hostile work environment because she did not exhaust these claims before the EEOC. Kraftman's motion further contends that plaintiff's LEDL claim is time-barred. Plaintiff filed her opposition memorandum on April 11, 2016. [doc. # 15]. Kraftman filed its reply on April 25, 2016. [doc. # 20]. Thus, the matter is ripe.

## Discussion

**I.     Standard of Review**

    a)     <u>12(b)(1) vs. 12(b)(6)</u>

Kraftman contends that plaintiff's "Second Claim for Relief" is subject to dismissal

because she did not include hostile work environment or failure to accommodate allegations in her EEOC charge, thereby failing to exhaust administrative remedies as to those claims. There is some uncertainty in the Fifth Circuit regarding whether Title VII's exhaustion requirement is jurisdictional, or merely a prerequisite to suit. *Pacheco v. Mineta*, 448 F.3d 783, 788 n.7 (5th Cir.2006). More recently, however, the Fifth Circuit has held that the EEOC's conciliation requirement is a precondition to suit, but not jurisdictional. *E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 469 (5th Cir.2009).

The undersigned will follow the developing trend, and find that Title VII's EEOC exhaustion requirement is not jurisdictional. *Bailey v. Napolitano*, Civ. Action No. 11-1110, 2012 WL 1658790, at *4-5 (N.D. Tex. May 11, 2012).[2] Therefore, plaintiff's invocation of federal law in her complaint suffices to sustain federal subject matter jurisdiction via federal question, 28 U.S.C. § 1331. *Cervantez v. Bexar County Civil Service Commission*, 99 F.3d 730, 733 (5th Cir. 1996) (citation omitted).

b) <u>12(b)(6) Principles</u>

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." Fed.R.Civ.P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127

---

[2] The outcome below would be the same even if the exhaustion requirement *were* jurisdictional.

S.Ct. 1955 (2007)).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. *See Iqbal, supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.  Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra* (citation omitted).  A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely.  *Twombly,*

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*.  A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id*.  Moreover, courts are compelled to dismiss claims grounded upon invalid legal theories even though they might otherwise be well-pleaded. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Nevertheless, "[t]he notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. Appx. 710, 713 (5th Cir. 2008) (citations and internal quotation marks omitted).  Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory.  Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [her] legal argument." *Skinner v. Switzer*, 562 U. S. 521, 131 S. Ct. 1289, 1296 (2011).  Indeed, "[c]ourts

4

must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.' " *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting *Bell Atl.*, 127 S. Ct. at 1958). In the context of employment discrimination claims, "the ordinary rules for assessing the sufficiency of a complaint apply," and a plaintiff need not establish a prima facie case of employment discrimination in her complaint. *Swierkiewicz v. Sorema*, 534 U.S. 506, 511, 122 S.Ct. 992, 997 (2002).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" – including public records. *Dorsey, supra*; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record). Furthermore, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-499 (5th Cir. 2000) (citations and internal quotation marks omitted).

## II. Exhaustion

In *McClain v. Lufkin Indus., Inc*, the Fifth Circuit encapsulated Title VII's exhaustion requirement as follows,

> Title VII requires employees to exhaust their administrative remedies before seeking judicial relief. Private sector employees must satisfy this requirement by filing an administrative charge with the EEOC. The charge enables the EEOC to investigate and, if appropriate, negotiate a resolution with an employer. Only after administrative efforts terminate may the employee sue the employer in federal court.

> Courts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation. Nevertheless, competing policies underlie judicial interpretation of the exhaustion requirement. On one hand, the scope of an EEOC charge should be liberally construed for litigation purposes because Title VII "was designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship." On the other hand, the "primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in [an] attempt to achieve non-judicial resolution of employment discrimination claims." To reconcile these policies, th[e] [Fifth Circuit] construes an EEOC complaint broadly but in terms of the administrative EEOC investigation that "can reasonably be expected to grow out of the charge of discrimination." [The courts] use a "fact-intensive analysis" of the administrative charge that looks beyond the four corners of the document to its substance. In sum, a Title VII lawsuit may include allegations "like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission."

*McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir.2008) (internal citations omitted).

Thus, although the actual scope of an EEOC investigation does not determine whether a claim is exhausted, the investigation of a particular claim creates a strong inference that such a claim was presented. *Clark v. Kraft Foods, Inc.*, 18 F.3d 1278, 1280 (5th Cir.1994).

In support of its motion to dismiss, Kraftman adduced a copy of plaintiff's July 15, 2014, EEOC charge wherein she asserted that she converted to the Pagan religion four years earlier, and on April 28, 2014, legally changed her name to her Pagan name. (EEOC Charge No. 461-2014-01263; M/Dismiss, Exh. A).[3] Plaintiff's charge further stated that on May 6, 2014, Kraftman's CEO told her that she had to change her name back to her former name or her

---

[3] The court may consider the charge for purposes of the instant motion because plaintiff referred to it in her complaint, and it remains central to her claim. *Collins, supra*; Compl., ¶¶ 17-21. Although plaintiff alleged in her complaint that she exhausted available administrative remedies, when, as here, there is a conflict between allegations in a pleading and exhibits thereto, the exhibits control. *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir.2004) (citation omitted).

employment would be terminated. *Id*. That same date, she was discharged from employment. *Id*. Raven also indicated on the charge form that the earliest *and* latest date that discrimination occurred was May 6, 2014. *Id*. She concluded her charge by opining that she had been discriminated against on the basis of her Pagan religion. *Id*.

In other words, plaintiff's EEOC charge did not include any allegations that her employer: a) failed to accommodate her religion or religious practices (aside from her name change), or b) otherwise subjected her to a hostile work environment. In fact, the charge unequivocally confirms that the discrimination began on May 6, 2014, and culminated with her termination, on, or shortly after that same date.

In response to defendant's motion, plaintiff obtained and submitted documents from the EEOC's administrative file associated with her charge. (Pl. Opp. Memo., Exhs. 2-5).[4] The documents reflect that in 2011, plaintiff wrote a memorandum in response to management's inquiry about drawings displayed on her desk. *Id*. Furthermore, a witness, who had left defendant's employ in 2008 (i.e., *before* plaintiff's conversion to the Pagan religion), stated that Raven had been treated unfairly because of her religion, and confirmed that she had decorated her desk with various religious symbols. *Id*. However, there is no indication that the EEOC investigated a hostile work environment claim, or that once plaintiff explained to her employer the significance of the drawings and/or symbols on her desk, that Kraftman treated her differently than anyone else or subjected her to any adverse job action. Accordingly, unless Kraftman later contends that plaintiff was terminated from employment because of escalating

---

[4] Defendant objects to the court's consideration of these documents in the context of its Rule 12(b)(6) motion. The court need not resolve this issue, however, because consideration of the evidence does not materially impact the court's resolution of the motion.

incidents or behavior attributable to her religion, the court is not persuaded that a hostile work environment claim and/or failure to accommodate religious beliefs claim (aside from plaintiff's name change), reasonably can be expected to grow out of the wrongful termination charge precipitated by plaintiff's name change. *See Walton v. Lentz v. Innophos, Inc.*, 476 Fed. Appx. 566, 570 (5th Cir.2012) (hostile-work-environment claim could not "reasonably be expected to grow out of" EEOC charge alleging that employer discharged employee in retaliation for complaining about protected activity based on age); *Turner v. Novartis Pharm. Corp.*, 442 Fed. Appx. 139, 141 (5th Cir.2011) (EEOC charges alleging discrimination and retaliation do not reasonably encompass hostile work environment claim); *Williams v. E.I. du Pont de Nemours & Co.*, Civ. Action No. 14-382, 2015 WL 9581824, at *9 (M.D. La. Dec. 30, 2015) (hostile work environment claim did not reasonably grow out of EEOC charge alleging discrimination and retaliation).[5]

The court concludes that plaintiff's "Second Claim for Relief" for failure to accommodate religious practices and beliefs, which also arguably raised a hostile work environment claim, is subject to dismissal for failure to exhaust administrative remedies.[6]

### III. Prescription

Defendant contends that plaintiff's "Third Claim for Relief," which is grounded solely on

---

[5] Certainly, Kraftman's prior actions may provide context for plaintiff's unlawful termination claim. *See Pacheco*, 448 F.3d at 792.

[6] Although, plaintiff asserted in the "Introduction" section of her complaint that Kraftman "retaliated" against her, the complaint's four enumerated "Claim[s] for Relief" do not include a retaliation claim. In any event, plaintiff did not endeavor to support a retaliation claim in response to defendant's motion.

the LEDL, is untimely. The court agrees.[7]

The LEDL contains a one year prescriptive period that begins to run from the date of the alleged discriminatory act (termination, in this case), and which is suspended for up to six months during the pendency of an administrative review or investigation by the EEOC. *O'Neal v. Cargill, Inc.*, Civ. Action No. 15-7183, 2016 WL 1437873, at *6 (E.D. La. Apr. 12, 2016) (citations omitted); La. R.S. § 23:303(D). Thus, in effect, a plaintiff has a maximum of 18 months from the date of the last alleged discriminatory act in which to file suit under the LEDL. *Id*.[8]

Here, plaintiff alleged that she was discharged from employment on May 16, 2014. (Compl., ¶ 15). However, she did not commence the instant suit until December 9, 2016, some 23 days beyond her 18 month filing deadline, measured from her date of discharge. Accordingly, plaintiff's LEDL claim, asserted in her complaint as her "Third Claim for Relief," is time-barred, and subject to dismissal on that basis.

## Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that defendant's motion to dismiss for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1) [doc. # 5] be DENIED.

IT IS FURTHER RECOMMENDED that defendant's motion to dismiss for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6) [doc. # 5] be GRANTED,

---

[7] Plaintiff did not contest defendant's timeliness argument in her opposition brief.

[8] "When prescription is suspended, the time which preceded the suspension is added to the time which follows it." *Id*.

DISMISSING WITH PREJUDICE plaintiff's Title VII claims for hostile work environment and for failure to accommodate religious practices (apart from her name change), as well as her claims under the Louisiana Employment Discrimination Law, La. R.S. § 23:332 (i.e., her "Second" and "Third" Claims for Relief).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and F.R.C.P. Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 26th day of May 2016.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE